UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LONNIE KADE WELSH,
Institutional ID No. 6516607

                    Plaintiff,

v.                                                                    No.  5:24-CV-00202-H

JAMES PEARSON, *et al.*,

                    Defendants.

## OPINION AND ORDER

Plaintiff Lonnie Kade Welsh, a self-represented sexually violent predator (SVP) confined in the Texas Civil Commitment Center (TCCC), filed this civil-rights action against more than 60 defendants employed by the Management and Training Corporation (MTC) which operates the TCCC.  He complains about the conditions of his confinement in the TCCC and events that allegedly occurred there between May 2022 and August 2024. Dkt. No. 1.  Eight defendants—Adam Pierce, James Pearson, Stetson Fisher, Valerio Guerrero, Ricardo Nipper, James Cruz, Sarah Carrizales, and Tyler Swanger—were served, appeared, and now move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 26.

Plaintiff failed to serve the other named defendants in a timely manner, and the Court dismissed his claims against them under Federal Rule of Civil Procedure 4(m).  Dkt. No. 25.  Plaintiff now asks the Court to certify the dismissal of the unserved defendants as final under Rule 54(b).  Dkt. No. 32.

As explained below, after reviewing the parties' pleadings and the applicable law, the Court finds that most of Plaintiff's claims are duplicative, some of Plaintiff's claims are time

barred, and in any event, he has failed to state a plausible claim for relief under the Fourth or Fourteenth Amendments.  Likewise, the Court finds that Plaintiff has failed to state a viable claim under state tort law.

Thus, the Court grants Defendants' motion and dismisses Plaintiff's complaint.  And because the Court will enter final judgment in this case today, the Court denies Plaintiff's motion for a 54(b) judgment as moot.  Dkt. No. 32.

## 1.    Background

Plaintiff is a frequent and experienced litigant with a history of filing vexatious and abusive litigation.  *See Welsh v. Lamb Cnty*, No. 5:20-CV-00024, at Dkt. No. 128 (N.D. Tex. Sept. 16, 2024).  His frustrating litigation tactics have earned him sanctions at every level of the federal court system as well as in the state courts.[1]  Six months before he initiated this action, Plaintiff attempted to file an impermissible shotgun-style civil-rights complaint that spanned over 200 pages and named 77 defendants.  *See Welsh v. Mgmt. and Training Corp.*, No. 5:24-cv-00069.   After finding that the complaint did not satisfy the applicable pleading standards, the Court ordered him to replead.  *Id.* at Dkt. No. 7.  Specifically, the Court instructed him that he could not join unrelated defendants and claims into a single action

---

[1] The Supreme Court of the United States found that Plaintiff "has repeatedly abused th[e] Court's process."  *See Welsh v. Lamb Cnty.,* No. 22-10311, 2024 WL 81580, at *2 (5th Cir. Jan. 8, 2024) (citing *Welsh v. Collier*, 143 S. Ct. 1046 (2023)).  The Fifth Circuit has noticed Plaintiff's "multitude" of filings and his tendency to name the same defendants and raise parallel issues or similar claims across multiple cases.  *Id.*  And the Fifth Circuit sanctioned Plaintiff at least three times for continuously "fil[ing] frivolous or repetitive pleadings."  *See Welsh v. Thorne*, No. 23-11109, 2024 WL 1956145, at *2 (5th Cir. May 3, 2024); *Welsh v. McLane*, No. 23-50912, 2024 WL 1008593, at *1 (5th Cir. Mar. 8, 2024); *Welsh v. Jennings*, No. 25-10605, 2025 WL 3485820, at 2.  Finally, this Court declared Plaintiff a vexatious litigant.  *Welsh v. Lamb Cnty*, No. 5:20-cv-00024, 2024 WL 4203355, at *22–23.  He has also been deemed a vexatious litigant by the Texas state-court system and "is prohibited from filing pro se any new litigation in a court of this State without first obtaining permission from the local administrative judge."  *In re Welsh*, No. 09-23-00027-CV, 2023 WL 2175768, at *1 (Tex. App. Feb. 23, 2023).

and advised him to file additional, separate complaints as necessary. *Id.* Eventually, Plaintiff pared down that complaint to twenty-five pages, maintaining a smaller variety of claims against four defendants. *Id.* at Dkt. No. 25. He later filed this complaint as an additional, separate complaint, ostensibly to pursue claims he originally misjoined in No. 5:24-cv-00069.

### A.    Facts[2]

Plaintiff filed this civil-rights complaint on September 3, 2024, asserting 16 "counts" against 61 named defendants. He complains about the conditions of his confinement in the TCCC, and he describes various events that took place over the span of more than two years—between May 13, 2022 and August 7, 2024. Dkt. No. 1. Plaintiff claims that each of the eight appearing defendants either ordered or participated in actions that violated his constitutional rights. Many of the factual allegations in Plaintiff's complaint do not involve the eight active defendants who were timely served and have appeared. The Court will not discuss those extraneous claims except where necessary to add context to his live claims against the appearing defendants.

Plaintiff asserts that his troubles began on May 17, 2022 when he was placed in the Special Management Unit (SMU) for threatening a case manager—a disciplinary charge that he feels is unjust. Dkt. No. 1 at 10, 12–13. Then, he claims that on May 31, 2022, while he was engaged in "a verbal disagreement" with a different MTC security officer, Defendant Pearson used chemical spray against him. Dkt. No. 1 at 11. He contends that he

---

[2] Because this case is still in the pleading stage, the Court views all facts in the light most favorable to Plaintiff and accepts his well-pled facts as true.

suffered chemical burns, which were exacerbated because Defendant Pearson also ordered officers to turn off the water to his cell so that he could not decontaminate.  *Id.* at 12.

On the same day, after his second altercation with staff, Plaintiff asserts that various MTC administrators ordered that he be restrained in handcuffs whenever he left his room. *Id.* at 13.  He was subject to this restriction, as an apparent response to his repeated disciplinary problems, from May 31–October 1, 2022, December 10–23, 2022, January 24– April 10, 2023, April 25–May 24, 2023, July 1–November 2023, April 30–May 15, 2024, and August 7, 2024–the filing of his complaint.  Dkt. No. 1 at 13.  He asserts that Defendants Pearson, Pierce, Cruz, Fisher, Carrizales, and Swanger each either carried out this restriction by either directing other officers to place Plaintiff in restraints or personally placed restraints on him.  He complains that he was not given "any procedural due process"[3] before being placed in restraints, and the decision to restrain him was not made by a clinical professional.  *Id.* at 14.  He claims that most of the time, he remained in handcuffs while he was using the phone, at recreation, or in visitation.  *Id.* at 15.

He contends that some officers left the handcuffs loose enough to slip over his thumbs, but Defendant Swanger applied the cuffs so tightly that they caused bruises and cuts.  And he says that the lock on the handcuffs was defective, requiring officers to twist and pull on them to unlock them.  Plaintiff states that he informed Defendant Pearson that the cuffs were defective and causing him pain, and Defendant Pearson responded that "cuffs are not meant to be comfortable."  *Id.* at 16.

---

[3] Plaintiff also alleges, however, that he participated in a Behavioral Management Review (BMR) hearing on June 7, 2022 based on the May 17, 2022 disciplinary charge.

He asserts that Defendants Pearson, Pierce, Cruz, Fisher, Carrizales, and Swanger also ordered that he be searched whenever he left his room and before he re-entered his room, and that his room be searched each time he left. *Id.* at 14. He contends that Defendants Nipper, Swanger, Carrizales, and Guerrero carried out these orders and placed him in restraints, searched him, and searched his room.

Plaintiff claims that another officer used chemical agents against him again in April 2023. *Id.* at 17–18. He asserts that Defendants Pierce, Nipper, and Guerrero were present as part of a 5-man response team during the incident, but he does not allege any specific act or omission by these defendants with regard to the chemical spray.

Next, Plaintiff complains that while he was confined in the SMU—the TCCC's solitary confinement housing—Defendants Swanger, Cruz, Pierce, Carrizales, and Nipper participated with other staff in "continuously slam[ming] the door day and night, keep[ing] the radio at a loud volume and refus[ing] to stop talking loudly all night and into the early mornings right in front of [Plaintiff's] cell door." Dkt. No. 1 at 19. He asserts that "[t]hese individuals are instructed to slam the door multiple times at night . . . a minimum of 8 times and a maximum of 15 times a night" and "by policy have their radio turned up at a loud volume." *Id.* But he also says that "[t]hese individuals were instructed to stop with the lo[u]d noise but deliberately ignored [the instruction.]" *Id.* As a result, he asserts that, between May 17, 2022 and January 24, 2023, he "never received more than 15 minutes of sleep at night before it was interrupted by security," which caused him to experience homicidal and suicidal thoughts and declining mental function. *Id.* at 19–20.

In sum, Plaintiff's complaint boils down to three categories of wrongs between May 2022 and August 2024—the use of chemical spray, the implementation of search-and-restraint restrictions, and the practice of sleep-disrupting noise in the SMU.

### B.    Plaintiff's Claims

Plaintiff asserts that Defendants' application of mechanical restraints violated his state-created liberty interest under Texas Health and Safety Code § 841.0838, and his Fourteenth Amendment procedural and substantive due process rights, including the right to be free from restraint unless ordered by a clinical professional.  Dkt. No. 1 at 20–22. He also contends that Defendants' harassing searches of his cell and his person violated his rights under the Fourth and Fourteenth Amendments.  *Id.* at 22–23.  He asserts that Defendant Pearson used excessive force by spraying chemical agents at Plaintiff on May 31, 2022 in violation of his Fourth and Fourteenth Amendment rights and his state-created liberty interest under Texas Health and Safety Code § 841.0838.  *Id.* at 23.  And he claims that Defendants Swanger, Cruz, Pierce, Carrizales, and Nipper participated in the disruption of his sleep in violation of the Fourteenth Amendment.  Additionally, he raises state tort claims of negligence, private nuisance, and intentional infliction of emotional distress against Defendants for their actions in using force, restraining him, conducting searches, and disrupting his sleep.

Plaintiff seeks compensatory and punitive damages.

### C.    Claim Splitting

"Generally, res judicata must be pled as an affirmative defense."  *McIntyre v. Ben E. Keith Co.*, 754 F. App'x 262, 264 (5th Cir. 2018).  Defendants did not seek dismissal of the claims here on res judicata or claim-splitting grounds.  But the Court may sua sponte

consider claim splitting "in the interest of judicial economy where both actions were brought before the same court." *Id.* (quoting *Mowbray v. Cameron Cnty. Tex.*, 274 F.3d 269, 281 (5th Cir. 2001)). In other words, "[d]istrict courts have discretion to control their dockets by dismissing duplicative cases." *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)

Here, Plaintiff bases this complaint entirely on the same nucleus of operative fact that underlies his pending claims in No. 5:24-cv-00069. But he sues a different set of defendants. And although Defendants did not raise the issue in their motion to dismiss, Plaintiff included it in his reply. Dkt. No. 30. Because of the duplicative nature of most of Plaintiff's claims here, the Court discusses claim splitting in the interest of judicial economy and to avoid simultaneous adjudication of identical claims in separate lawsuits.

As explained above, Plaintiff first filed a shotgun pleading, attempting to join several factually distinct claims against nearly 80 defendants in a single action. The Court required him to replead, instructing him to comply with the applicable rules. But rather than dividing his myriad of unrelated claims into separate complaints based on subject matter, Plaintiff chose to maintain a (smaller) variety of claims against a few select administrators in No. 5:24-cv-00069.

He filed this complaint ostensibly to pursue claims that he had to trim from his shotgun pleading. But Plaintiff inexplicably focuses almost entirely on the same series of events and transactions. So after narrowing his claims in No. 5:24-cv-00069, he filed this separate action and simply repeated most of the narrowed claims while naming different defendants. In other words, after he pared down his shotgun pleading and loaded a more

focused round of ammunition, he now seeks to fire the same ammunition at a different, but related set of targets.  But his double-barreled approach must backfire.

The Court explained to Plaintiff in the earlier case that he could not maintain *unrelated* claims—for example, denial of dental care, mishandling of legal mail, denial of hygiene items, and excessive use of force—in the same complaint.  *See* No. 5:24-cv-00069, at Dkt. No. 7.  And he responded by abandoning some of his claims and repeating the same three core complaints in two separate lawsuits.  Now, he argues that the Court cannot hold him responsible for claim splitting because it forced him to split his claims.  But he chose to file this repetitive lawsuit, raising claims that are clearly related to his live claims in No. 5:24-cv-00069, instead of pursuing claims based on unrelated subject matter.  This is the sort of frustrating, abusive litigation tactic that has earned Plaintiff sanctions in the past.  *See Welsh v. Lamb Cnty.,* No. 22-10311, 2024 WL 81580, at *2 (5th Cir. Jan. 8, 2024) (noting Plaintiff's "multitude" of filings and his tendency to raise parallel issues or similar claims across multiple cases); *see also Welsh v. Thorne*, No. 23-11109, 2024 WL 1956145, at *2 (5th Cir. May 3, 2024) (sanctioning Plaintiff for continuously filing "frivolous or repetitive pleadings"); *Welsh v. McLane*, No. 23-50912, 2024 WL 1008593, at *1 (5th Cir. Mar. 8, 2024) (same).

"The rule against claim splitting prohibits a party or parties in privity from simultaneously prosecuting multiple suits involving the same subject matter against the same defendants."  *Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623, 628 (5th Cir. 2023) (quoting *Gen. Land Off. v. Biden*, 71 F.4th 264, 269–70 (5th Cir. 2023)).  The rule stems from principles of res judicata and designed to prevent harassing, repetitive litigation.  *Id.*  It primarily operates "to avoid the waste of duplication . . . and to avoid piecemeal resolution

of issues that call for a uniform result." *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 729 (5th Cir. 1985) (collecting cases).  As a result, "the Court retains discretion to control its docket by dismissing duplicative cases." *Verde v. Stoneridge, Inc.*, 137 F. Supp. 3d 963, 974 (E.D. Tex. 2015).  Claim splitting bars a second lawsuit when it involves (1) the same parties or parties in privity, and (2) the same claim or cause of action as a prior, pending lawsuit.  *Id.*

This action indisputably involves the same claims as No. 5:24-cv-00069[4] but names different defendants.  The pivotal question, then, is whether the employee defendants here are in privity with the administrator defendants in the earlier suit.  The Fifth Circuit "has found parties in privity 'where the non-party's interests were adequately represented by a party to the original suit.'"  *Gen. Land Off.*, 71 F.4th at 270 (quoting *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990)).  Privity "requires more than a showing of parallel interests or, even, a use of the same attorney in both suits."  *Id.* (citing *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 865 (5th Cir. 1985).  But "[a] vicarious liability relationship between an employer and employee can create the requisite privity."  *Sacks v. Texas S. Univ.*, 83 F.4th 340, 346 (5th Cir. 2023) (citing *Lubrizol Corp v. Exxon Corp.*, 871 F.2d 1279, 1289 (5th Cir. 1989)).

In No. 5:24-cv-00069, he sues MTC and MTC's Facility Manager, Assistant Facility Manager, and Chief of Security for the TCCC.  Plaintiff specifically sues these defendants under a vicarious-liability theory as supervisors and policy makers over the same series of

---

[4] All of Plaintiff's claims here arise out of the same series of events and the same time period.  In both actions, Plaintiff complains about the same two uses of chemical spray, the same restraint-and-search restrictions during the same time periods, and the same sleep-disruption conditions in the SMU.

events and transactions.  *See* No. 5:24-cv-00069, Dkt. No. 25 at 2, 3–6, 13–14, 21–22.  And

in this case, Plaintiff identifies each of the eight defendants here as employees of MTC.  *See*

Dkt. No. 1 at 2–5.  He sues them here for carrying out the orders and policies of the

administrator defendants.  Plaintiff even admits that "all these defendants act in privy to

defendant in 5:24-cv-00069-H [all sic]."  Dkt. No. 30 at 1–2.  The Court finds that, for many

of Plaintiff's claims, Defendants' interests are adequately represented by the administrator

defendants named in No. 5:24-cv-00069.  Moreover, the Court finds that the relationship

between the supervisory, administrator defendants, and the employee defendants satisfies

the requirements of privity.

    As a result, under the doctrine of claim splitting, the Court will not consider any

claim raised by Plaintiff here that is pending in No. 5:24-cv-00069.  Among other things, the

following claims are pending in his earlier case:

(a)    He was denied procedural due process related to the application of restraints between May 31, 2022 and September 19, 2024;[5]

(b)    The continued, knowing use of defective handcuffs between May 31, 2022 and May 25, 2023 violated his Fourteenth Amendment right to be free from restraint, and substantive due process right to be free from excessive force;[6]

(c)    MTC's use-of-force policy that allowed mechanical and chemical restraints against Plaintiff between May 31, 2022 and September 2024 violated Texas Health and Safety Code § 841.0838, which provides a state-created liberty interest;[7]

(d)    MTC's use-of-force policy, the use of chemical spray in May 2022 and April 2023, and the application of the restraint restriction against Plaintiff between May 31, 2022 and September 2024 violated his procedural and substantive

---

[5] No. 5:24-cv-00069, Dkt. No. 25 at 3.

[6] *Id.* at 3–4.

[7] *Id.* at 4, 6.

due process right to have a trained medical professional determine whether restraints were appropriate;[8]

(e)    MTC and its administrators imposed a policy to harass Plaintiff and prevent him from sleeping, and they "instructed . . . staff to continuously slam the door day and night, keep the radio at a loud volume and refuse to prevent the staff from talking loudly all night and into the early morning" between May 17, 2022 and January 24, 202[3] and later;[9] and

(f)    The practice of repeated cell searches violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from harassment and unlawful searches;[10]

The Court will not permit Plaintiff to litigate the same claims simultaneously in two cases.  As a result, the Court will not consider in this case any of the claims listed in (a)–(f) above, including the propriety of the restraint-and-search restrictions under the Constitution or state law, Plaintiff's procedural due process claims related to the restraint-and-search restrictions, or the alleged sleep-disruption policy or practice.  These claims are inseparable from the claims Plaintiff has pending in his earlier case and require a single, uniform result.  This conclusion is also supported by Plaintiff's response to Defendants' motion to dismiss, which focuses almost entirely on the broader policy and practice claims and contains no new facts about the employee defendants' alleged independent acts or omissions.  Dkt. No. 30.

Plaintiff has alleged no facts to separate the liability of the employee defendants here from the liability of the administrator defendants in his earlier suit for the implementation or enforcement of these allegedly unlawful practices.  *See Pembaur v. City of Cincinnati*, 475 U.S.

---

[8] *Id.* at 5–6.

[9] *Id.* at 13–14.

[10] *Id.* at 14.

469, 481 (1986) ("If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood."). Plaintiff does not assert that the employee defendants acted independently or exercised any discretion in carrying out the restraint-and-search procedures or the sleep-disruption practices. On these claims, the interests of the defendants is identical.[11] Moreover, the piecemeal resolution of these claims here would necessarily hamstring the Court's adjudication of the same claims in No. 5:24-cv-00069. And the Court is in a better position to adjudicate these claims in the earlier filed case because the record is more developed and the case has progressed to the summary judgment phase.

But the Court will consider Plaintiff's individual claims against the employee defendants to the extent that he alleges that they personally violated his rights in specific instances beyond simply carrying out the complained-of restrictions and policies. As a result, the Court will address Plaintiff's claims that certain Defendants used excessive force in spraying him with chemical agents or applying handcuffs too tightly, harassed him by searching his room and leaving it messy, and made noise to disrupt his sleep.[12]

---

[11] Alternatively, the Court finds that Plaintiff has failed to state a claim against the defendants here on any of his policy or practice claims. He has not alleged that MTC delegated policymaking authority to any of the named defendants in this case, who are all subordinate employees of MTC. *See Piotrowski v. City of* Houston, 237 F.3d 567, 579 (5th Cir. 2001) (explaining the required elements of a policy claim). Nor does he state any facts to suggest that any of the named defendants made the decision to implement the restraint-and-search restrictions against him. At most, he alleges that some of these defendants, as mid-level supervisors, repeated orders first issued by the administrator defendants in No. 5:24-cv-00069.

[12] The sleep-disruption claims are difficult to separate from Plaintiff's related policy claims in No. 5:24-cv-00069. To the extent that Plaintiff claims that the employee defendants acted in accordance with the allegedly unlawful noise policy or practice implemented by the administrator defendants, the Court finds that his claims are duplicative and cannot be properly considered here. But to the extent that Plaintiff claims that the employee defendants independently acted to violate his rights under the Constitution or state tort law, the Court will address the claims here.

**2.      Defendants' motion to dismiss**

Defendants now move to dismiss Plaintiff's complaint under Rule 12(b)(6).  Dkt. No.
26.  They assert that Plaintiff's claims are barred by the applicable statute of limitations.
They also address each of his claims in turn, arguing that Plaintiff failed to state a claim
under the Fourth or Fourteenth Amendments or under state tort law.  As a result, they urge
the Court to dismiss Plaintiff's complaint and all claims within it.

**3.      Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal if a plaintiff "fails to state a claim upon which relief
may be granted."  Fed. R. Civ. P. 12(b)(6).  At the motion-to-dismiss stage, the Court must
accept all factual allegations in the complaint as true and draw all reasonable inferences in
the plaintiff's favor.  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  In
reviewing a motion to dismiss under Rule 12(b)(6), a district court must generally examine
only the complaint and any attachments to the complaint.  *Collins v. Morgan Stanley Dean
Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  But a court may consider extrinsic documentary
evidence if (1) the document is attached to a defendant's motion to dismiss, (2) the
document is referred to in the plaintiff's complaint, and (3) the document is "central" to the
plaintiff's claim.  *Id.* at 498–99.

The plaintiff must plead "enough facts to state a claim of relief that is plausible on its
face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[T]o survive a Rule 12(b)(6)
motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide
the plaintiff's grounds for entitlement to relief–including factual allegations that when
assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503
F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, at 555)).

13

A claim is facially plausible when it asserts facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This determination is context-specific and requires the court to draw upon its own experience and common sense. *Id*.

## 4.    Discussion

### A.    Statute of Limitations

Defendants assert that several of Plaintiff's claims are time-barred. Federal courts apply the state's general personal-injury limitation period to Section 1983 claims. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989). The applicable limitation period in Texas is two years. Tex. Civ. Prac. & Rem. Code § 16.003(a); *see also Piotrowski v. City of Houston*, 51 F.3d 512, 514 n.5 (5th Cir. 1995). Plaintiff filed his original complaint here on September 3, 2024;[13] so, his claims are untimely if they accrued before September 3, 2022. A cause of action accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the action. *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1981).

Defendants contend that Plaintiff's claims accrued in May 2022 when MTC officials implemented the practice of applying restraints, searching Plaintiff, and searching Plaintiff's room whenever he left his room, and when the sleep-disruption practices began to affect him. Defendants argue that Plaintiff was aware of these implemented practices and aware of his injury from these actions in May 2022. Dkt. No. 26 at 22 (citing *Stanley v. Morgan*,

---

[13] The Court uses the date that the complaint was received by the Clerk. Plaintiff's confinement in the TCCC does not necessarily entitle him to benefit from the prison mailbox rule. *See Welsh v. Unknown Male Shift Supervisor*, 2023 WL 6533457, at *2 & n.5 (5th Cir. 2023) (finding that Welsh's motion, received one day late, was untimely and that the court was not required to apply the mailbox rule); *cf. Brown v. Taylor*, 829 F.3d 365, 368–69 (5th Cir. 2016) (applying the mailbox rule to a civilly committed SVP because the specific facts in the record showed that he was "functionally a prisoner," and applying the law-of-the-case doctrine). In any event, even if the mailbox rule applied, it would not save Plaintiff's untimely claims.

120 F.4th 467, 470 (5th Cir. 2024) (explaining that the accrual date for a federal cause of action "is judged not from the date the injury ceases, but from the earliest date a plaintiff was or should have been aware of his injury and its connection with the defendant") (quoting *Brousette v. City of Baton Rouge*, 29 F.3d 623 (5th Cir. 1994)).  And Defendants point out that, except for his allegations about the use of chemical spray, Plaintiff does not allege any specific dates with regard to his claims against any defendant.  Instead, he generally asserts that each defendant participated in the restraint, search, and sleep-disruption policies or practices between May 2022 and September 2024.  If Plaintiff's policy and practice claims were not duplicative, they would be time barred as explained by Defendants.  But as explained above, Plaintiff's policy and practice claims remain pending in No. 5:24-cv-00069, where they were timely filed, so they are not properly before the Court in this case.[14]

Instead, the Court only considers Plaintiff's allegations of specific instances of misconduct.  In doing so, the relevant date is September 3, 2022.  Plaintiff's claims about Defendants' specific acts or omissions before September 3, 2022 are time barred.  To the extent that Plaintiff claims any active Defendant used excessive force, harassed him, or disrupted his sleep after September 3, 2022, those claims are timely.

Plaintiff makes two arguments that his claims should be considered timely.  First, he asserts that he is entitled to equitable tolling because he originally raised these claims in No. 5:24-cv-00069, which he filed in March 2024—before the limitation period expired.   But this argument is unavailing.  In the Fifth Circuit, "equitable tolling 'applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some other extraordinary way from asserting his rights.'" *Jaso v. The Coca Cola*

---

[14] Indeed, this point reinforces the duplicative nature of Plaintiff's claims.

*Co.*, 435 F. App'x 346, 357–58 (5th Cir. 2011) (quoting *Rashidi v. Am. President Lines,* 96 F.3d 124, 128 (5th Cir. 1996)).  But importantly, "a plaintiff who 'fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.'"  *Id.* (quoting *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 152 (1984)).

Plaintiff waited until the very end of the limitation period to file his shotgun pleading in No. 5:24-cv-00069.  The Court notified him of the defects in that pleading and allowed him to amend.  No. 5:24-cv-00069 at Dkt. No. 7. *Id.*  The Court instructed Plaintiff that he could not join a myriad of unrelated claims together in one complaint.  *Id.*  But the Court left it to Plaintiff to decide how to organize his claims into separate complaints and which claims to pursue in that action.  *See id.* at Dkt. No. 12.  Plaintiff filed his first amended complaint in that action on July 23, 2024 and did not name any of the eight active defendants here.  *Id.* at Dkt. No. 13.  He filed this action more than a month later.

Plaintiff is an experienced litigant who is familiar with the applicable rules of pleading.  And he is the architect of his own fate here.  He chose to impermissibly bundle dozens of unrelated claims in a single complaint at the end of the limitation period.  And although the Court required him to replead in compliance with the rules, he chose which claims to prioritize and which claims to cut.  In short, no extraordinary circumstances prevented Plaintiff from timely pursuing his claims in a procedurally correct manner.  As argued by Defendants, "[n]othing but Plaintiff's own refusal to comply with the Rules of Civil Procedure precluded him from timely filing suit . . . against Defendants."  Dkt. No. 26 at 24.

Plaintiff's second argument fares no better.  He argues that his claims should be treated as timely by operation of the continuing-violations doctrine.  The continuing-

violations doctrine is a form of equitable tolling. *Texas v. United States*, 891 F.3d, 553, 562 (5th Cir. 2018). But the doctrine applies in only limited circumstances, allowing a plaintiff to "complain of otherwise time-barred acts . . . if it can be shown that the [injury] manifested itself over time, rather than in a series of discrete acts." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). And the Fifth Circuit cautions courts "not to confuse continuous violations with a single violation followed by continuing consequences; only continuous unlawful acts can form the basis of a continuous violation." *McGregor v. Louisiana State Univ. Bd. Of Sup'rs*, 3 F.3d 850, 867 (5th Cir. 1993).

Plaintiff complains about a series of discrete acts. First, he complains of two isolated use-of-chemical-force incidents nearly a year apart—one in May 2022 (outside the limitation period) and the other in April 2023 (within the limitation period). He asserts that his alleged injuries from each use of chemical spray manifested immediately. His claim against Defendant Pearson for using chemical agents against him on May 31, 2022 is untimely and cannot be saved by the continuing-violations doctrine.

Plaintiff's claim about the April 2023 use of chemical agents, however, is not untimely. But this claim still cannot proceed here. Although Plaintiff alleges that Defendants Pierce, Nipper, and Guerrero were present when another individual used chemical spray against him, he does not allege that they participated in any way. Thus, Plaintiff has failed to state a claim against Defendants related to the April 2023 use of chemical spray.

Next, Plaintiff complains that, beginning in May 2022, whenever he left his room, Defendants placed him in handcuffs, patted him down, and searched his room. But he does not allege that these violations were continuous, either. Instead, he asserts that Defendants

17

carried out these restrictions for discrete periods of time. And he complains of specific instances when he says the handcuffs were too tight, causing bruises and scrapes. Similarly, he complains that sometimes the pat-down searches were forceful, and the room searches left his room disorganized. These alleged injuries manifested immediately, not slowly over time. Thus, the continuing violations doctrine does not toll Plaintiff's claims. To the extent Plaintiff claims that any active defendant used excessive force in handcuffing Plaintiff or patting him down before September 3, 2022, or searched his room in a harassing manner before September 3, 2022, his claims are time barred. But because the Court finds that Plaintiff's complaint here concerns only individual events rather than a single continuous practice, his claims for individual occasions of forceful handcuffing or harassing searches after September 3, 2022 are timely.

Likewise, because Plaintiff maintains claims about the pattern or practice of interrupting sleep in the SMU by staff slamming doors, keeping radio volumes high, and speaking loudly in No. 5:24-cv-00069, he cannot pursue those claims simultaneously here. Thus, the Court only considers Plaintiff's claims that Defendants unlawfully carried out that policy in specific instances. And only those specific instances alleged after September 3, 2022 are timely.

### B. Excessive Force

To sustain an excessive-force claim under the Fourteenth Amendment, Plaintiff must show that "the force purposefully and knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). The objective reasonableness of force turns on the facts and circumstances of the case, and the Supreme Court has identified several relevant factors to be considered, including the extent of the

18

plaintiff's injury. *Id.* And to state a claim for excessive force, the injury must be more than *de minimis*. *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005).

"Handcuffing too tightly, without more, does not amount to excessive force." *Montes v. Ransom*, 219 F. App'x 378, 380 (5th Cir. 2007). Swelling, redness, bruising, and cuts from tightly applied handcuffs are generally too minor to be actionable. *Id.*; *See also Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1008 (8th Cir. 2003) (finding detainee's claim that her handcuffs were secured so tightly they made her bleed was too minor to amount to excessive force); *Tarver*, 410 F.3d at 751–52 (finding detainee's allegation that forceful handcuffing caused "acute contusions of the wrist" and psychological injury were insufficient to state a claim for excessive force).

Plaintiff fails to allege any actionable injury as a result of Defendant Swanger tightly applying handcuffs. Nor has he alleged any actionable injury from Defendants twisting the handcuffs to unlock them. Likewise, Plaintiff fails to state any injury at all from Defendants' forceful pat-down searches.

### C.    Fourth Amendment

Plaintiff asserts that Defendants violated the Fourth Amendment by conducting "arbitrary" searches of his room, and he implies that he is entitled to increased privacy because he "pays the State to live at the civil commitment [center]." Dkt. No. 30 at 21. But as argued by Defendants, because Plaintiff is involuntarily committed as a sexually violent predator, he cannot show that he has a constitutional expectation of privacy in his room. *Rogers v. McLane*, No. 5:22-cv-00130, 2023 WL 4629044, at *10 n.11 (N.D. Tex. June 30, 2023) *adopted* 2023 WL 4636894 (N.D. Tex. Jul 19, 2023); *Bell v. Wolfish*, 441 U.S. 520, 537 (1979) ("Loss of freedom of choice and privacy are inherent incidents of

confinement in … a [detention] facility."); *see also Glazewski v. Barnett*, No. 22-1877 (JXN)(JSA), 2022 WL 2046921, at *3—4 (D.N.J. June 7, 2022) (dismissing civilly detained SVP's claim that cell search violated his constitutional rights, "because detainees lack an expectation of privacy in their cells"); *Chubb v. Keck*, No. 17-3220-SAC, 2020 WL 5653263, at *6 (D. Kan. Sept. 23, 2020) ("[C]ourts have not found that residents in sexual predator treatment programs generally have a reasonable expectation of privacy in their rooms.")

Thus, Plaintiff has failed to state a viable claim against Defendants for conducting unreasonable searches under the Fourth Amendment.

### D.    Fourteenth Amendment

Plaintiff vaguely invokes the Fourteenth Amendment with respect to his claims that Defendants made excessive noise by slamming doors, talking loudly, and leaving their radios at a loud volume.  Dkt. No. 1 at 19, 24.  Affording Plaintiff liberal construction, the Court understands him to claim that Defendants acted with deliberate indifference to his health or safety.  As a civilly committed SVP, Plaintiff's "claim of deliberate indifference is derived from the Due Process Clause of the Fourteenth Amendment," but "the protection afforded him is functionally indistinguishable from the Eighth Amendment's protection for convicted prisoners."  *Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013); *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996).  Thus, courts apply the same deliberate-indifference standard to pretrial and civil detainees as well as convicted prisoners. "Deliberate indifference is an extremely high standard to meet."  *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

A plaintiff must show both an objective and a subjective component to meet the deliberate indifference standard.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  First, he

must show that the deprivation was objectively serious—that it "violated contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1991); *Walker v. Nunn*, 456 F. App'x 419, 422 (5th Cir. 2011). "[S]leep undoubtedly counts as one of life's basic needs," so "[c]onditions designed to prevent sleep . . . might violate the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999).

To establish the subjective prong, the prisoner must show that the official (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and (2) actually drew the inference. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)). "[A] prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837 (1994). And the Fifth Circuit has "consistently recognized . . . that "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty, TX*, 245 F.3d 447, 458 (5th Cir. 2001).

Here, assuming Plaintiff describes an objectively serious deprivation of sleep to meet the objective component of his claim, he has alleged no facts to establish the subjective prong. He asserts that Defendants slammed doors, talked loudly, and "by policy" have their radios at a loud volume. Dkt. No. 1 at 19. And he asserts that they "were instructed to stop with the lo[u]d noise but deliberately ignored [the instruction]," and they "refuse[d] to stop from talking loudly." *Id.* He does not specify who instructed them to stop or provide any detail about that interaction. He also claims that their actions often woke him up and denied him adequate sleep, which affected his mental health. *Id.* at 20. But he provides no

plausible allegations to suggest that any of the defendants here were subjectively aware of a substantial risk of serious harm.  He does not allege that he spoke with any of the named defendants about his sleep troubles or the effects it was having on his mental health.  Nor does he provide any other plausible allegations to suggest that the defendants knew of but disregarded a serious risk to his health and safety.  His conclusory allegations that they acted "deliberately," without any supporting facts, are not enough to plead a plausible claim for relief.

In short, Plaintiff's claims that Defendants disturbed his sleep by shutting doors, talking loudly, and maintaining their radios at the volume required "by policy," fail to satisfy the extremely high deliberate-indifference standard.  Indeed, Plaintiff relies on the same facts to support his state tort claim for negligence against Defendants, stating that they "were negligent" in slamming doors, talking by his cell door, and keeping the volume on their radios turned up.  Dkt. No. 1 at 28.  But deliberate indifference cannot be inferred from mere negligence.  *Dyer*, 964 F.3d at 381.

### E.    State Tort Claims

"The Fifth Circuit's 'general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.'"  *Welsh v. Williams*, No. 5:22-CV-183-BQ, 2023 WL 11990749, *39 (N.D. Tex. June 30, 2023) (citing *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992)).  Because the Court finds that all of Plaintiff's federal claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over his state-law claims against these defendants.  28 U.S.C. § 1367(c)(3).

5.    **Conclusion**

For the reasons discussed above, the Court grants Defendants' motion to dismiss.

Dkt. No. 26. Plaintiff's complaint and all claims within it are dismissed with prejudice,[15]

except for his state-law claims, which are dismissed without prejudice.

The Court will enter judgment accordingly.

Dated March 11, 2026.

James Wesley Hendrix
United States District Judge

---

[15] As explained above, nothing in this order will prejudice the ongoing litigation of Plaintiff's policy and practice claims against MTC and the administrator defendants in No. 5:24-cv-00069, which encompasses the majority of the claims Plaintiff attempted to raise here. But Plaintiff has failed to state an actionable claim against the defendants named in this proceeding as to either his policy and practice claims or any alleged independent violations. Plaintiff did not seek leave to amend, and the Court declines to grant him leave to amend. Plaintiff is aware of the claim-splitting issue because he raised it in his response. Dkt. No. 30. And Defendants explained the defects in his individual claims against them in the motion to dismiss, but Plaintiff did not expand on these claims in his response. Instead, he implies that discovery will reveal more facts to support his claims. Dkt. No. 30 at 3. But "a plaintiff must allege facts supporting a plausible claim *before* being entitled to discovery and cannot hide behind broad legal conclusions to satisfy the pleading requirements." *Davis v. Supreme Lab. Source, LLC*, No. EP-23-CV-00046-KC, 2023 WL 6612902, at *10 (W.D. Tex. Oct. 10, 2023) (quoting *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022)), *adopted,* No. EP-23-CV-46-KC, 2023 WL 8649821 (W.D. Tex. Dec. 14, 2023). Because Plaintiff was aware of the defects in his pleading and failed to cure them in response to Defendants' motion, the Court dismisses these claims with prejudice. Additionally, given Plaintiff's history, his decision to file duplicative claims here evinces bad faith and dilatory motive, which also counsels against granting leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).